## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SANDEEP GOPALAN,                           *

      *Plaintiff*,                           *

    v.                                    *

                      No. 1:25-cv-02469-MJM

UNIVERSITY OF MARYLAND             *
EASTERN SHORE, *et al*.,

             *Defendants*.            *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

ANTHONY G. BROWN
Attorney General of Maryland

*/s/ Sarah Marquardt*

_____
SARAH MARQUARDT
Federal Bar No. 17294
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202
(410) 576-6437 (facsimile)
smarquardt@oag.state.md.us
(410) 576-6320
(410) 576-6437 (facsimile)

November 10, 2025

*Attorney for Defendants*
*University of Maryland Eastern Shore,*
*University System of Maryland,*
*Rondall Allen,*
*Heidi Anderson,*
*Jason Casares,*
*Jay Perman*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT....................................................................................................... 6

I.      STANDARD OF REVIEW ....................................................................... 6

II.     PLAINTIFF'S CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY AND STATE
        STATUTORY IMMUNITY. ....................................................................... 8

        A.      The University and USM Have Eleventh Amendment Immunity From
                Plaintiff's Due Process, § 1983, § 1985, Ultra Vires and Tortious
                Interference with Contract Claims. ................................................. 8

        B.      The Individual Defendants Also Have Eleventh Amendment and State
                Sovereign Immunity From All Claims Against Them. ............................. 11

III.    PLAINTIFF'S DUE PROCESS CLAIMS IN COUNTS I AND III SHOULD BE
        DISMISSED BECAUSE HE DID NOT HAVE A CONSTITUTIONALLY PROTECTED
        PROPERTY INTEREST IN THE CONTINUATION OF THE FUTURES INSTITUTE. ........... 14

IV.     THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY. ........... 17

V.      PLAINTIFF'S TITLE VI DISCRIMINATION AND RETALIATION CLAIMS IN
        COUNTS TWO AND THREE SHOULD BE DISMISSED. ................................................. 19

        A.      Plaintiff Has Not Alleged that Defendants Engaged in Intentional
                Discrimination. ........................................................................... 20

        B.      Plaintiff Has Not Alleged that He Engaged in Title VI Protected
                Activity. ..................................................................................... 21

        C.      Title VI Claims Are Not Cognizable Against the Individual
                Defendants. ................................................................................ 22

VI.     PLAINTIFF'S ULTRA VIRES CLAIM SHOULD BE DISMISSED BECAUSE
        PLAINTIFF CANNOT DEMONSTRATE THAT DEFENDANTS VIOLATED A CLEAR
        STATUTORY MANDATE. ........................................................................... 23

i

VII.   PLAINTIFF'S CONSPIRACY CLAIM UNDER 42 U.S.C. § 1985 IS DEFICIENT AS
       A MATTER OF LAW BECAUSE IT FAILS TO SUFFICIENTLY PLEAD THE
       REQUISITE ELEMENTS AND IS BARRED BY THE INTRACORPORATE
       CONSPIRACY DOCTRINE. ........................................................................ 24

       A.   Count Six Must Be Dismissed for Failure to Allege a Racial or Other
            Class-Based Discriminatory Animus, Which Is a Necessary Element
            of a § 1985 Conspiracy .............................................................................. 25

       B.   Plaintiff's Alleged Conspiracy Claim Is Barred Under the
            Intracorporate Conspiracy Doctrine. ......................................................... 26

VIII.  PLAINTIFF'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIM  SHOULD BE
       DISMISSED BECAUSE IT FAILS TO PLEAD THE REQUISITE ELEMENTS. .................. 28

CONCLUSION .......................................................................................................... 29

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| SANDEEP GOPALAN, | * | |
| *Plaintiff*, | * | |
| v. | * | |
| | | No. 1:25-cv-02469-MJM |
| UNIVERSITY OF MARYLAND | * | |
| EASTERN SHORE, *et al.*, | | |
| | * | |
| *Defendants*. | | |
| | * | |

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Defendants University of Maryland Eastern Shore, University System of Maryland, Rondall Allen, Heidi Anderson, Jason Casares, and Jay Perman, by undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss the complaint filed by plaintiff, Dr. Sandeep Gopalan.

## INTRODUCTION

Dr. Sandeep Gopalan, a faculty member at the University of Maryland Eastern Shore (the "University"), has filed this sprawling lawsuit in which he voices dissatisfaction with the "corruption and maladministration" of the University. Plaintiff's broad-sweeping allegations claim that the University's administration is a "criminal enterprise." He asserts that University employees routinely carried out offenses ranging from embezzlement, plagiarism, diversion of federal funds, fraudulent reporting of student data to deceive the government, and fraud in connection with physical plant and facilities. Dr. Gopalan claims

that Defendants acted with "evil and malicious nature," and engaged in "nefarious schemes."

While Dr. Gopalan's complaint consists largely of disjointed and unrelated grievances, the essence of his allegations relate to his belief that the University improperly terminated the "Futures Institute," an inter-disciplinary research group Dr. Gopalan founded to focus on artificial intelligence, climate change, and healthcare. Dr. Gopalan claims that the University's termination of the Futures Institute and its associated funding violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d – 2000d-7 ("Title VI") (counts two and three). He also alleges due process violations (count one), violation of civil rights and "ultra vires" (counts four and five), civil conspiracy (count six), and tortious interference with contract (count seven). In addition to the University, Dr. Gopalan names the (i) University System of Maryland ("USM"), (ii) USM Chancellor Jay Perman, (iii) Dr. Heidi Anderson, the University's President, (iv) Dr. Rondall Allen, University's Provost, and (v) Jason Casares, Director of Institutional Equity at the University, as defendants.

While Dr. Gopalan's pro se complaint is rife with personal grievances and critiques of the University's administration and staff, at bottom, he ultimately fails to state legally cognizable claims against any of the defendants. Indeed, even liberally construing his claims, his complaint fails to withstand scrutiny. As demonstrated herein, the complaint should be dismissed because his claims are barred by the doctrine of sovereign immunity, qualified immunity, and state statutory immunity. Dr. Gopalan's due process claims are also precluded because he did not have a protected property interest in the continuation of

the Futures Institute.  His alleged Title VI claim fails as a matter of law because he has failed to assert that defendants engaged in intentional discrimination or that he engaged in a protected activity.  His claim of civil conspiracy is deficient because he has not alleged any racial or other class-based discriminatory animus and the claim is otherwise precluded by the intracorporate conspiracy doctrine.  Finally, he fails to allege facts sufficient to state a plausible tortious interference with contract claim.  Accordingly, this Court should dismiss all claims in Dr. Gopalan's complaint with prejudice.

## STATEMENT OF FACTS[1]

Dr. Gopalan alleges broad and varied critiques against USM and the University's administration and staff.  For instance, he alleges that Dr. Anderson has been the University's president since 2018 "despite her dreadful prior record."  *See* Comp'l. at ¶ 14.  He also claims that Dr. Allen does not have the requisite qualifications to be Provost, a role he has held since 2022, and that he held other positions since 2015 with "catastrophic failures."  *Id*. at ¶ 13.  He asserts that the administration is a "criminal enterprise to divert federal and state funds to their benefit," *id*. at ¶ 16, that they have "parasitic and symbiotic relationships . . . in their nefarious schemes," *id*. at ¶ 18, and that the University has poor student outcomes, including a low graduation rate.  *Id*. at ¶ 19.  Despite these critiques and concerns, Dr. Gopalan accepted a position to become a professor at the University in January 2023.  *Id*. at ¶ 10.  One year later, in February 2024, he also accepted a position to

---

[1] For purposes of this motion, the University will recite the facts alleged in the complaint as if they were true.  Defendants dispute many of the alleged facts and reserve the right to do so in future pleadings.

become Vice President for Research at the University and also agreed to serve as the University's accreditation liaison officer.  *Id.* at ¶¶ 12, 22.

Dr. Gopalan alleges that in his role as accreditation liaison officer, beginning in 2024, he was involved in creating a compliance report for the University's accreditor, the Middle States Commission on Higher Education.  *Id.* at ¶ 22.  He alleges that while preparing this report, he noticed problems with "assessment outcomes, maladministration, faculty and staff grievances, and integrity," and on several occasions communicated these issues to Dr. Anderson and Dr. Allen.  *Id.* at ¶¶ 23, 25. He also claims to have learned that the U.S. Department of Commerce had issued a notice of noncompliance and opened an investigation to determine how a federal grant for iPads intended for poor minorities was used.  *Id.* at ¶¶ 26, 27.  He alleges that Dr. Anderson and Dr. Allen embezzled thousands of these iPads and diverted them "to their cronies."  *Id.* at ¶ 26.  He also claims that two other federal agencies were conducting audits of the University.  *Id.* at ¶ 28.

Dr. Gopalan believes the University engaged in "criminal activity," and alleges that when he tried to convince Dr. Anderson and Dr. Allen "to follow the law," they brushed him off.  *Id.* at ¶¶ 30-33.  In June 2024, unsatisfied with Dr. Anderson's and Dr. Allen's response, Dr. Gopalan alleges he sent "whistleblower" letters reporting this alleged criminal activity to unidentified federal agencies, the Maryland Attorney General's Office, and the USM Board of Regents.  *Id.* at ¶¶ 33-34.  He claims these letters mentioned theft of federal funds and unspecified discriminatory workplace practices.  *Id.* at ¶ 34.

In September 2024, Dr. Gopalan allegedly submitted additional whistleblower complaints to the USM Board of Regents, asking for the termination of Chancellor Jay

Perman, and complaining about a hostile working environment, abuses of employees, and systemic illegal activity. *Id*. at ¶ 38. He also takes issue with his office space at the University, alleging that Dr. Allen inappropriately "hoarded" "dozens of vacant rooms." *Id*. at ¶ 42. In September 2024, Dr. Gopalan sent a letter to the USM Board of Regents requesting that Chancellor Jay Perman be fired for "covering up corruption." *Id*. at ¶ 38. In December 2024, he submitted an additional complaint to the USM Board of Regents regarding Dr. Anderson's and Dr. Allen's alleged "embezzlement, diversion of federal funds, fraudulent reporting of student data to deceive the government, fraud in connection with physical plant and facilities, and other malfeasance." *Id*. at ¶ 43.

While Dr. Gopalan sets forth these wide-ranging criticisms of the University and its staff, the crux of his complaint centers on his dissatisfaction with the University's decision to terminate the "Futures Institute," a program he founded in December 2023 to focus on researching climate change, artificial intelligence and healthcare. *See id.* at ¶ 11; Ex. A to Compl. The program was funded by a $4.6 million competitive grant from the U.S. Department of Education, which was used in part to provide scholarships for nine doctoral students. *See id*. at ¶ 11. According to the complaint, from December 2024-January 2025, Dr. Allen, Dr. Anderson and Mr. Casares, the director of the University's Office of Institutional Equity, "began conspiring to steal Dr. Gopalan's Futures Institute grant of $4.6 million and contacted the U.S. Department of Education for that purpose." *See id.* at ¶ 46. He claims this was "theft of intellectual property" because he developed the program and was the principal investigator for the grant, although he states that the Department of Education "blocked the theft." *Id*. at ¶ 47. He then alleges that Dr. Allen "sought to

unlawfully terminate the admission of several Futures Institute students in January 2025" but that their admission was restored when they complained to the Board of Regents.  *Id.* at ¶ 48.

By letter dated February 27, 2025, Dr. Allen provided formal notification that the Futures Institute had closed.  Compl. at ¶ 49;  Ex. B to Compl.  Accordingly, no further work was required on any of its related projects.  *Id.*  Dr. Gopalan alleges that the termination conflicts with federal and state law, and the strategic plans of both the USM and the University, and has caused him harm.  *See* Compl. ¶¶ 57-64.

## ARGUMENT

### I.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of proving the existence of subject matter jurisdiction.  *Demetres v. E.W. Const., Inc.*, 776 F. 3d 271, 272 (4th Cir. 2015).  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  The Fourth Circuit has affirmed that sovereign immunity is a jurisdictional bar.  *See Cunningham v. Gen. Dynamics Info. Tech., Inc.,* 888 F. 3d 640, 649 (4th Cir. 2018) ("sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.") (internal citation omitted).

To withstand a Federal Rule 12(b)(6) motion to dismiss, a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal* and *Twombly* decisions "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the well-pled facts are accepted as true, the Court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (citations and internal quotations omitted). The Court may consider admissions in the pleadings and take judicial notice of "matters of public record." *Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

A plaintiff proceeding pro se is held to a "less stringent standard than is a lawyer, and the court must construe his claims liberally, no matter how inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, even a pro se plaintiff must articulate more than mere "labels or conclusions" or "a formulaic recitation of the elements of [a] cause of action." *Walden v. Allstate Ins. Co.*, 388 F. App'x 223, 224 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. 555).

II.    **PLAINTIFF'S CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY AND STATE STATUTORY IMMUNITY.**

Apart from Dr. Gopalan's Title VI claims (counts two and three), all counts against the University and USM are barred by sovereign immunity.[2]    As to the individual defendants, all of Dr. Gopalan's claims are barred by sovereign immunity and state statutory immunity.    In view of these immunities, and the arguments set forth herein, this Court lacks subject matter jurisdiction.

A.    **The University and USM Have Eleventh Amendment Immunity From Plaintiff's Due Process, § 1983, § 1985, Ultra Vires and Tortious Interference with Contract Claims.**

Dr. Gopalan's due process claims under the Fourteenth Amendment to the U.S. Constitution (count one), ultra vires claim (count four), civil rights claim under 42 U.S.C. § 1983 (count five), conspiracy claim under 42 U.S.C. § 1985 (count six), and his tortious interference with contract claim (count seven) are precluded by the University's and USM's Eleventh Amendment immunity.    The Eleventh Amendment to the United States Constitution bars suits in federal court by citizens against un-consenting states and state agencies.[3]    *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).    "This jurisdictional bar applies regardless of the nature of the relief sought."    *Id.*    USM and the

---

[2] As demonstrated in Section V *infra*, Dr. Gopalan's Title VI claims against the University and USM are precluded for other reasons.    As such, there is no viable claim over which this Court has subject matter jurisdiction.

[3] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."    U.S. Const. Amend. XI.

University, as a constituent institution of USM, are considered instrumentalities of the State for immunity purposes.  Md. Code Ann., Educ. § 12-102(a)(1)-(3) (USM is "an instrumentality of the State" and "an independent unit of State government"); *id.* § 12-101(b)(6)(iii) (the University is a constituent institution of USM).

There are three exceptions to Eleventh Amendment immunity, none of which applies here.  First, a state may waive its Eleventh Amendment immunity.  *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).  Second, Congress may abrogate the sovereign immunity of the States by acting pursuant to a grant of constitutional authority.  *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80 (2000).  Third, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar private citizens from suing state officials in their official capacity for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law.  *Halderman*, 465 U.S. at 101.

The first exception does not apply because Maryland has not waived its Eleventh Amendment immunity to claims under 42 U.S.C. §§ 1983 and 1985, or for due process or tort claims in federal court.  *See, e.g., Harmon v. Maryland Dep't. of Health & Mental Hygiene*, No. ELH-13-605, 2013 WL 867992, *3 (D. Md. March 3, 2013) ("While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. Code Ann., State Gov't, § 12-101, *et seq.*, it has not waived its immunity under the Eleventh Amendment to suit in federal court") (quoting *Dixon v. Baltimore City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003), *aff'd*, 88 F. App'x 610 (4th Cir. 2004)); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 397-98 (4th Cir. 1990)

(recognizing that Maryland has not waived Eleventh Amendment immunity from tort claims in federal court); *Farmer v. Ramsey*, 41 F. Supp. 2d 587 (D. Md. 1999) (Eleventh Amendment barred claim filed against the University of Maryland directly under the Fourteenth Amendment), *aff'd*, 43 Fed. App'x 547 (4th Cir. 2002).  In addition, while State of Maryland has enacted a limited waiver of its sovereign immunity for tort and contract actions brought against the State and its agencies, State Gov't § 12-104, § 12-201, this waiver applies only "in a court of the State."  *Id*. § 12-104(a)(1), §12-201(a); *see Weller*, 901 F.2d at 397-98 ("The waiver of sovereign immunity in the Maryland Torts Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts.").  Because Dr. Gopalan filed his action in federal court, Maryland's limited waiver for tort and contract claims is therefore inapplicable.

The second exception does not apply because in enacting 42 U.S.C. §§ 1983 and 1985, Congress did not abrogate the States' Eleventh Amendment immunity.  *See Pennhurst*, 465 U.S. 89 at 120 ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim."); *Gregory v. Currituck County,* 2022 WL 1598961 at *2 (4th Cir., May 20, 2022) (no abrogation for § 1985 claims).  Additionally, because Dr. Gopalan's tortious interference with contract claim only involves state law, abrogation by Congress is not an issue.

Finally, the *Ex parte Young* exception does not apply to state entities such as the University and USM but rather state officials only.  *See Lee-Thomas v. Prince George's Cty. Public Schools*, 666 F.3d 244, 249 (4th Cir. 2012) (recognizing that the lawsuit

seeking injunctive relief must name a state official as the defendant, not state agency). Thus, Dr. Gopalan's Fourteenth Amendment due process claim (count one), civil rights claim under 42 U.S.C. § 1983, conspiracy claim under 42 U.S.C. § 1985 (counts five and six), ultra vires claim (count four), and tortious interference with contract claim (count seven) against the University and USM are barred by Eleventh Amendment and state sovereign immunity and must be dismissed for lack of subject matter jurisdiction.

### B. The Individual Defendants Also Have Eleventh Amendment and State Sovereign Immunity From All Claims Against Them.

The individually named defendants share in the University's and USM's immunity from being sued in federal court because a "suit against the state officials acting in their official capacities is a suit against the State." *Weller v. Dep't of Soc. Serv's for City of Balt.*, 901 F.2d 387, 398 (4th Cir. 1990) (citation omitted). As such, Dr. Gopalan's claims against these defendants, all of whom are State employees, are barred by the Eleventh Amendment.

Moreover, Dr. Gopalan's tortious interference with contract claim (count seven) against the individual defendants is also precluded by State statutory immunity. State Gov't, § 12-105 ("State personnel shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article."); Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (state employees "are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence"); *see Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 763 (D. Md. 2015) (finding University employees personally

immune from negligence suits under § 5-522(b)).  Therefore, the individual defendants are entitled to statutory immunity so long as they were acting within the scope of their employment and did not act with malice or gross negligence.  Setting Dr. Gopalan's personal opinions aside, he presents no *facts* that the individual defendants were grossly negligent or acted with malice.  Additionally, he makes no allegation and states no facts showing that any individual defendants acted beyond the scope of their employment with the University or USM.  To the contrary, the factual allegations in the complaint are directly tied to the individual defendants' status as University or USM employees.  Accordingly, this Court lacks subject matter jurisdiction over Dr. Gopalan's tortious interference claim (count seven) against the individual defendants.

Finally, Dr. Gopalan cannot rely on the *Ex parte Young* exception to sustain his claims against the individually named defendants.  The *Ex parte Young* exception is viewed as a "narrow one" and is only applicable where a party seeks prospective relief.  *See MedSense, LLC v. Univ. Sys. of Md.,* 420 F. Supp. 3d 382, 391, n.4 (D. Md. 2019).  Thus, the exception does not apply to Dr. Gopalan's claims against the individually named defendants for damages.  Moreover, the *Ex parte Young* exception does not apply where the alleged violation of federal law occurred entirely in the past.  *See DeBauche v. Trani*, 191 F. 3d 499, 505 (4th Cir. 1999) (noting that the *Ex parte Young* exception "applies only when there is an ongoing violation of federal law that can be cured by prospective relief. It does not apply when the alleged violation of federal law occurred entirely in the past."). Here, Dr. Gopalan alleges that defendants violated the law when they closed the Futures Institute.  Accordingly, the alleged violation has already occurred.

The fact that he seeks injunctive relief to "restore funding to the Futures Institute and reinstate Plaintiff as director," *see* Compl. at p. 1, is immaterial.  That was precisely the situation in *Edelman v. Jordan*, in which the Supreme Court held that a federal-court injunction styled as "equitable restitution" was barred by the Eleventh Amendment because "in practical effect" it required the payment of benefits wrongfully withheld in the past, "at a time when [the state] was under no court-imposed obligation" to make such payments. 415 U.S. 668, 668 (1974).  As the Fourth Circuit has stated, "It is the substance of the relief sought, not the form, that controls."  *Albert v. Lierman*, 152 F. 4th 554, 561 (4th Cir. 2025). Accordingly, "[i]f an injunction or declaratory judgment would in essence compensate a party for a past injury, then it is retrospective, not prospective under *Ex parte Young*.  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 278-81 (1986) (injunction against "continue[d] withholding of accrued benefits" is retroactive and outside scope of *Ex parte Young*)); *Green v. Mansour,* 474 U.S. 64, 73 (1985) (declaratory judgment with practical effect of award of damages may not be sought in federal court as "partial 'end run' around" *Edelman*).  Here, Dr. Gopalan seeks damages in various forms, including "[i]nterim relief to Plaintiff," the "immediate restoration of all scholarships, stipends, honoraria, and other payments owed," "judgment in favor of Plaintiff," an "award of substantial compensatory and punitive damages from [the University and USM] for enabling willful and malicious illegal activities for individual named Defendants, and compensatory and punitive damages from the individual defendants."  *See* Compl. at pp. 21-22.  The *Ex parte Young* exception therefore does not apply and all claims against the individual defendants should be dismissed.

III.   **PLAINTIFF'S DUE PROCESS CLAIMS IN COUNTS I AND III SHOULD BE DISMISSED BECAUSE HE DID NOT HAVE A CONSTITUTIONALLY PROTECTED PROPERTY INTEREST IN THE CONTINUATION OF THE FUTURES INSTITUTE.**

In counts one and five, Dr. Gopalan alleges, via 42 U.S.C. § 1983, that the defendants violated his Fourteenth Amendment due process rights.[4]  In addition to the fact that these claims are barred by immunity, as demonstrated in section II above, these claims also fail because Dr. Gopalan cannot demonstrate that he had a property interest in the continuation of the Futures Institute.

To allege a procedural due process claim, a plaintiff must show (1) that he had a property or liberty interest, (2) of which a state actor deprived him, (3) without due process of law. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988).  "Property interests, of course, are not created by the Constitution."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Id.*  To have a property interest in a benefit, a person must have a "legitimate claim of entitlement to it."  *Id.*  A mere "abstract need or desire for it" or "a unilateral expectation of it" is insufficient.  *Id; see also Town v. Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005) (recognizing that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

Dr. Gopalan claims that he had "protected rights in the continuation of the Futures Institute and its competitively secured funding."  Compl. at ¶ 66 and p. 1 (alleging that

---

[4] The due process claims in counts one and five are seemingly redundant.

plaintiff had a "constitutionally protected rights and liberty interests in the $4.6 million grant he secured."). He further alleges that he had protected rights in the "freedom to conduct research," the "funding for tuition and scholarships" the "privileges associated with conducting Ph.D. education," and liberty interests in his name, reputation, and the free speech rights. *Id*. at ¶ 66. But he does not identify any source of law which supposedly provides him with the foregoing property or liberty interests. For that reason alone, his due process claims fail. *See Smith v. Ashcroft*, 295 F. 3d 425, 429 (4th Cir. 2002) (holding that, to advance a federal due process claim, plaintiff must first establish that he has a property or liberty interest at stake).

Moreover, nearly all of these purported interests stem from the Futures Institute, and thus, they reduce to a single interest, namely, a purportedly protected interest in the "continuation of the Futures Institute." *See* Compl. at ¶ 66. But courts have held that there is no property or liberty interest in discretionary grants or funding awards. *See, e.g. Navratil v. City of Racine*, 101 F. 4th 511, 524, 533-34 (6th Cir. 2024) (affirming the entry of summary judgment in favor of the defendants on plaintiff's substantive and procedural due process claims where claims were premised on the defendant city's denial of the plaintiff's grant applications for emergency funds); *Ruffin v. Nicely*, 183 F. App'x 505, 510-11 (6th Cir. 2006) (affirming dismissal of due process claims where plaintiff failed to identify a property interest that he had in either the grant to the university or the university subcontract). Because Dr. Gopalan failed to allege a constitutionally protected property or liberty interest that was purportedly violated by defendants, his due process claims asserted in counts one and five should be dismissed.

Finally, he has failed to allege any violations of his *substantive* due process rights because he has not alleged that the university acted in an arbitrary or irrational manner. To implicate substantive due process rights, governmental action must be "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford Cnty*., 946 F. 2d 278, 281 (4th Cir. 1991), *cert. denied*, 502 U.S. 1097; *see also Love v. Pepersack*, 47 F. 3d 120, 123 (4th Cir. 995) ("A violation of 'substantive' due process occurs only where the government's actions in depriving a person of life, liberty or property are so unjust that no amount of fair procedure can rectify them."). Here, defendants' actions in terminating the Futures Institute were not "so arbitrary and irrational" as to shock the conscience. *Rucker*, 946 F. 2d at 281. To the contrary, the University made an administrative decision to change course and close the project. *See* Ex. B to Compl. The Supreme Court has admonished that a "school is an academic institution, not a courtroom or administrative hearing room." *Board of Curators v. Univ. of Mo. v. Horowitz*, 435 U.S. 78, 88 (1978). Thus, courts have expressed hesitancy to "interfere with the organization and the operation of an institution of higher education." *Tigrett v. Rector & Visitors of Univ. of Va*., 290 F. 3d 620 (4th Cir. 2002); *Tice v. Botetourt County Sch. Bd*., 908 F. 2d 1200, 1205 (4th Cir. 1990) (reasonable decisions on educational policy deserve deference). Here, the University's closure of the Futures Institute is entitled to judicial deference. Dr. Gopalan has identified no protected interests in the continuation of the Futures Institute and no conduct with respect to closure

of the Institute that shocks the conscience.  His due process claims should therefore be dismissed.

**IV.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

While Dr. Gopalan alleges that the individual defendants "are being sued both in their personal and official capacities," the complaint has no allegations regarding the *personal* involvement of the defendants.  Rather, the complaint's allegations arise out of the termination of the Futures Institute, a program at the University where Dr. Anderson, Dr. Allen, and Mr. Casares are employed.  Compl. ¶¶ 2-4.  The same is true for USM Chancellor Perman. Dr. Gopalan has not alleged that any of these defendants were acting for their own personal reasons or outside the scope of their employment in deciding to terminate the Futures Institute.

This Court should also dismiss Dr. Gopalan's personal capacity claims against the individual defendants because they are entitled to qualified immunity.  Under the quality immunity doctrine, public employees may be sued personally for their official conduct only if their acts can be said to violate "clearly established" legal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).  "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).   A qualified immunity analysis consists of two questions that can be taken in any order: (1) do the facts alleged show a violation of a constitutional right; and (2) if so, was that right "clearly established" at the time of defendant's alleged misconduct. *Pearson*, 555 U.S. at 236.

As explained *supra*, Dr. Gopalan's allegations falter at the first step of the analysis because he states no claim that any defendant engaged in conduct that violated a constitutional right. *See* section III *supra*. While the Court may stop after the first step, *see Pearson*, 555 U.S. at 236, Dr. Gopalan's claims against the individual defendants also fail at the second step. In conducting the "clearly established" analysis, courts in the Fourth Circuit look to the decisions of the U.S. Supreme Court, the Court of Appeals for the Fourth Circuit, and the Supreme Court of Maryland, and "ordinarily need not look any further than decisions from these courts." *Booker v. S.C. Dep't of Corr.,* 855 F. 3d 533, 538-89 (4th Cir. 2017). To determine whether a right is clearly established, it is not required that a case be "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Clearly established rights should not be defined "at a high level of generality," but "must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

The individual defendants' alleged conduct here violated no clearly established law. Specifically, there is no controlling authority clearly establishing that public university officials cannot end projects such as the Futures Institute or that doing so violates the rights of faculty who benefit from such projects. As the Supreme Court has stated, "When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment." *See*

18

*Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding that the protection of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). Moreover, the Fourth Circuit has cautioned that courts in general "should be loathe to interfere with the organization and operation of an institution of higher education." *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F. 3d 620, 629 (4th Cir. 2002); *accord Harwood v. Johns Hopkins Univ.*, 130 Md. App. 476, 483-84 (2000) (holding "courts will not generally interfere in the operations of colleges and universities.").

Dr. Gopalan's allegations do not demonstrate a violation of any clearly established law by the individual defendants, let alone any violation of any clearly established law of which the individual defendants should have been aware. Accordingly, defendants are entitled to qualified immunity and Dr. Gopalan's claims against them should be dismissed with prejudice. *See McWaters v. Rick*, 54 Fed. App'x, 379, 384 (4th Cir. 2002) (defendants entitled to qualified immunity and dismissal of action because plaintiff failed to show that the constitutional rights were clearly established).

## V.    PLAINTIFF'S TITLE VI DISCRIMINATION AND RETALIATION CLAIMS IN COUNTS TWO AND THREE SHOULD BE DISMISSED.

In counts two and three, Dr. Gopalan alleges discrimination and retaliation in violation of Title VI. Both claims fail as a matter of law because there are no allegations that he engaged in a protected activity under Title VI, nor has he alleged facts to show that the defendants discriminated against him on the basis of race. Moreover, to the extent he

intends to assert such claims against the individual defendants, his claims are not cognizable.

### A.    Plaintiff Has Not Alleged that Defendants Engaged in Intentional Discrimination.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d.  To plead a Title VI discrimination claim, a plaintiff must "allege facts that show the defendant intentionally discriminated against [the plaintiff] on the basis of race[.]"  *Hodge v. Coll. of S. Md.*, 121 F. Supp. 3d 486, 501-02 (D. Md. 2015) (*citing Sandoval*, 532 U.S. at 280) (dismissing Title VI claim because plaintiff's complaint "provide[d] only conclusory assertions devoid of factual support that [the alleged misconduct was] motivated by racial discrimination").  As the Supreme Court has explained, "Title VI itself directly reach[es] only instances of intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 307 n. 14 (2002) (alteration in original) (quoting *Alexander v. Choate*, 469 U.S. 287, 293 (1985)).    A "[d]iscriminatory purpose ... implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (emphasis added) (internal citation omitted).    Accordingly, a plaintiff "must do more than simply allege [their] unfavorable treatment was on account of 'discriminatory animus.' [He] must give some facts to support that the Defendants' alleged misconduct *was motivated by race*." *Evans v.*

*7520 Surratts Rd. Operations, LLC*, 2021 WL 5326463, at *4 (D. Md. Nov. 16, 2021) (emphasis added) (dismissing Title VI claim).

Here, noticeably absent from Dr. Gopalan's complaint is a single factual allegation that pleads intentional discrimination. Rather, Dr. Gopalan simply asserts that the defendants "expressed preferences for the hiring of Blacks," *see* compl. at ¶ 72, and then baldly concludes that "The Futures Institute was targeted for discriminatory treatment because of the Plaintiff's race [Asian]." *See id*. at ¶ 74. Such threadbare allegations fail to raise his Title VI claim above the speculative level. *See Evans*, 2021 WL 5326463, at *4; *Taite v. Express Primary Care, LLC*, No. MJM-24-327, 2024 WL 3200614, at *5 (D. Md. June 27, 2024) ("[C]onclusory allegations are insufficient to show that the disparate treatment was plausibly based on race."). Dr. Gopalan's complaint fails to state a plausible claim for relief that permits the Court to infer more than the mere possibility of misconduct. Accordingly, his Title VI discrimination and retaliation claims should be dismissed.

### B.  Plaintiff Has Not Alleged that He Engaged in Title VI Protected Activity.

To successfully plead retaliation under Title VI, a plaintiff must allege, *inter alia*, that he engaged in protected activity. *Bowman v. Baltimore City Bd. of Sch. Commr's*, 173 F. Supp. 3d 242, 247 (D. Md. 2016) (specifying elements for retaliation under Title IV). The inquiry concerning "protected activity" involves whether the employee subjectively believed that the employer had engaged in a practice violative of Title VI and whether this belief was objectively reasonable in light of the facts. *Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003) (discussing protected activity under Title VI).

Dr. Gopalan makes no allegation that he engaged in any Title VI protected activity. Instead, he claims that he filed "whistleblower complaints" detailing how Dr. Anderson and Dr. Allen were allegedly "embezzling iPads intended for poor minorities and diverting those resources to their cronies." *See* Compl. at ¶ 26. He also claims that he filed "additional whistleblower complaints" regarding the "diversion of federal funds, fraudulent reporting of student data to deceive the government, fraud in connection with physical plant and facilities and other malfeasance." *See id.* at ¶ 44. Finally, plaintiff claims that he filed complaints regarding Chancellor Jay Perman's alleged corruption and the purported "hostile work environment, abuses of employees, and systematic illegal activity." *See id.* at ¶ 38. None of these complaints fall within the ambit of Title VI. There is no allegation that Dr. Gopalan ever complained of discrimination proscribed by Title VI, namely discrimination based on race, color, or national origin. 42 U.S.C. § 2000d. Without allegations that he engaged in protected activity under Title VI, he has not stated, and indeed cannot state, a claim for retaliation. Count three must therefore be dismissed.

### C.    Title VI Claims Are Not Cognizable Against the Individual Defendants.

Dr. Gopalan's Title VI claims against Dr. Anderson, Dr. Allen, Mr. Casares, and Chancellor Perman must be dismissed for an additional reason: there is no individual liability under Title VI. *See Bishop v. Lewis,* No. WMN-10-3640, 2011 WL 1704755 at *3 (D. Md. May 4, 2011) (dismissing a Title VI claim against an individual because "Title VI liability is premised on the receipt of federal funds," and any such funds "would be received by a governmental agency and not by an individual"); *Windsor v. Bd. of Educ. of*

*Prince George's Cty.,* No. TDC-14-2287, 2016 WL 4939294, at *9 (D. Md. Sept. 13, 2016)

("Defendants are correct that the Individual Defendants are not subject to suit under Title

VI because those Defendants are not programs or activities that have received any federal

funds within the meaning of Title VI.")  This claim should therefore be dismissed against

the individual defendants because Title VI claims are not cognizable against them.

VI.    **PLAINTIFF'S ULTRA VIRES CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF CANNOT DEMONSTRATE THAT DEFENDANTS VIOLATED A CLEAR STATUTORY MANDATE.**

Dr. Gopalan's putative claim invoking the non-statutory "ultra vires doctrine" is

without merit and should be dismissed.  It is a "narrow" doctrine, *Scottsdale Capital

Advisors Corp. v. Fin. Indus. Regul. Auth.*, 844 F. 2d 414, 421 (4th Cir. 2016), with an

"extremely limited scope." *Changji Esquel Textile Co. v. Raimondo*, 40 F. 4th 716, 721-22

(D.C. Cir. 2022) (collecting cases) (quoting *Griffith v. Federal Labor Relations Auth.*, 842

F. 2d 487, 493 (D.C. Cir. 1988)).  As the Supreme Court recently observed, an ultra vires

claim is "essentially a Hail Mary pass" that "rarely succeeds."  *Nuclear Regul. Comm'n v.

Texas*, 605 U.S. 665, 681-82 (2025).  This is not that rare case.  For the reasons discussed

in section II *supra*, this claim is barred by the Eleventh Amendment.  But even if it was not

barred on that basis, this Court still lacks subject-matter jurisdiction over this claim.

To show that subject-matter jurisdiction exists, a plaintiff must "satisfy [a] two-

pronged test." *Scottsdale*, 844 F. 3d at 421.  A plaintiff "must make (1) a 'strong and clear

demonstration that a clear, specific and mandatory [statutory provision] has been violated,'

and show that (2) the absence of federal court jurisdiction over an agency action 'would

wholly deprive' the aggrieved party of a meaningful and adequate means of vindicating its

statutory rights." *Id.* (quoting *Long Term Care Partners, LLC v. United States,* 516 F. 3d 225, 233-34 (4th Cir. 2008)).   Dr. Gopalan cannot satisfy the first prong, namely that the defendants have violated a "clear statutory mandate." *Hanauer v. Reich*, 82 F. 3d 1304, 1309 (4th Cir. 1996).  "The agency overstep must be 'plain on the record and on the face of the statute.'" *Federal Express Corp.*, 39 F. 4th at 765 (*quoting Oesterich v. Selective Serv. Sys. Local Bd., No. 11*, 393 U.S. 233, 238 n.7 (1968)).  Indeed, if "a cursory review of the merits reveals that the [defendant] did not violate a clear statutory mandate, the case must be dismissed for lack of subject matter jurisdiction." *Hanauer*, 82 F.3d at 1309.  While

Dr. Gopalan broadly and vaguely asserts that the termination of the Futures Institute grant "conflicts with the IGNITE Act, the Uniform Guidance, UMES's statutes, the Maryland Education Code, the USM and UMES Strategic Plans, and the new UMES Research Strategic Plan," *see* Compl. at ¶ 58, he fails to identify any *specific* statutory provision to support his assertion and how the termination violated that provision.  He has thus failed to show that subject matter jurisdiction exists, and his ultra vires claim should be dismissed as a matter of law.

## VII.    PLAINTIFF'S CONSPIRACY CLAIM UNDER 42 U.S.C. § 1985 IS DEFICIENT AS A MATTER OF LAW BECAUSE IT FAILS TO SUFFICIENTLY PLEAD THE REQUISITE ELEMENTS AND IS BARRED BY THE INTRACORPORATE CONSPIRACY DOCTRINE.

In count six, Dr. Gopalan seeks to hold the defendants liable for alleged participation in a civil conspiracy to violate the United States Constitution under 42 U.S.C. § 1985.[5]  In

---

[5] While plaintiff does not specify which subsection of §1985 he is proceeding under, he presumably brings this claim under subsection (3), which principally concerns conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons

addition to being barred under sovereign immunity, *see* section II *supra*, this claim is deficient for two other reasons: (1) Dr. Gopalan has not plead facts to support the elements of a conspiracy; and (2) the intracorporate conspiracy doctrine precludes a cause of action under 42 U.S.C. § 1985 against defendants.

### A. Count Six Must Be Dismissed for Failure to Allege a Racial or Other Class-Based Discriminatory Animus, Which Is a Necessary Element of a § 1985 Conspiracy.

To prove a § 1985(3) conspiracy, plaintiff "must show an agreement or 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Strickland v. United States*, 32 F. 4th 311, 361-62 (4th Cir. 2022) (quoting *Simmons v. Poe*, 47 F. 3d 1370, 1376-77 (4th Cir. 1995)). This is a "relatively stringent" standard, and the Fourth Circuit "has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy…." *Id*. To state a viable §1985 claim here, Dr. Gopalan must allege he was the victim of a conspiracy motivated by a specific class-based, invidiously discriminatory animus. *See United Bhd. of Carpenters v. Scott,* 463 U.S. 825, 835 (1983). But he has not pled any racial or other class-based invidiously discriminatory animus on the part of the defendants. Instead, he reasserts his position that the Future Institute grant was improperly terminated, albeit now repackaging his grievances as a civil conspiracy claim. *See* Compl. at ¶¶ 94, 99 (alleging that the individual defendants "met and agreed to unlawfully steal Plaintiff's grant," and "colluded and coordinated" their actions "in

---

of the equal protection of the laws, or of equal protection and immunities under the laws." *See* 42 U.S.C. § 1985(3).

furtherance of the conspiracy to violate the civil and constitutional rights of Plaintiffs [sic].").

As demonstrated above, while he broadly and vaguely alleges that "Defendants expressed preferences for the hiring of Blacks, and subjected Plaintiffs [sic] to discrimination and a hostile work environment by unlawfully terminating the funding," *see* Compl. at ¶ 72, his complaint lacks facts regarding discriminatory animus on the part of the defendants. That is, plaintiff fails to plead that there was ever a "meeting of the minds" or a "joint plan of action" to discriminate against him based on his race. *Simmons*, 47 F. 3d at 1377-78. His bald allegations of conspiracy, without more, fail to state a claim and should therefore be dismissed. *See Harris v. City of Virginia Beach*, 11 Fed. Appx. 212, 215 (4th Cir. 2001) (district court correctly ruled that a plaintiff alleging unlawful intent in conspiracy claims under § 1985(3) must plead specific facts in a nonconclusory fashion to survive a motion to dismiss); *see also Langworthy v. Dean*, 37 F. Supp. 2d 417, 424-25 (D. Md. 1999) (holding that a viable § 1985 must allege "facts with particularity which indicate intentional discrimination on the basis of racial animus or any other class-based discriminatory animus on the parts of the Defendants.").

### B.    Plaintiff's Alleged Conspiracy Claim Is Barred Under the Intracorporate Conspiracy Doctrine.

Dr. Gopalan's conspiracy claims are also barred under the intracorporate conspiracy doctrine. Under this doctrine, agents from a single legal entity are "legally incapable of conspiring, which requires multiple people acting together." *Lewin v. Cooke,* 28 Fed. Appx. 186, 195 (4th Cir. 2002). The doctrine is based on two principles: [a] corp[oration

cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985).

Dr. Gopalan thus cannot allege the USM and its agents conspired with one another, inasmuch as they are the same. *See Locus v. Fayetteville State Univ.*, 870 F. 2d 655, 1989 WL 21442 (4th Cir. 1989) (applying intracorporate conspiracy doctrine to bar civil conspiracy claim against university and its employees). Indeed, the Fourth Circuit has routinely affirmed the dismissal of a conspiracy claim against defendants who were alleged to be employees of the same entity. *See, e.g. Painter's Mill Grille v. Brown,* 716 F. 3d 342 (4th Cir. 2013) (affirming dismissal of conspiracy claims brought against landlord and landlord's agents because "a corporation cannot conspire with its agents because the agents' acts are the corporation's own."); *Lifmann v. Carlson Cos., Inc.*, 867 F. 2d 609, 1989 WL 5440, at **3-4 (4th Cir. 1989) (affirming dismissal of civil conspiracy claim on grounds that employees of a parent corporation and employees of a wholly owned subsidiary are legally incapable as a matter of law of forming a conspiracy); *Zombro v. Baltimore City Police Dept.*, 868 F. 2d 1364, 1371 (4th Cir. 1989) (observing that the Baltimore City Police Department, even if it were a person, "may not conspire with itself"). Since the University System of Maryland and its agents necessarily could not have conspired together to violate Dr. Gopalan's rights, count six must be dismissed.

27

VIII.    **PLAINTIFF'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIM SHOULD BE DISMISSED BECAUSE IT FAILS TO PLEAD THE REQUISITE ELEMENTS.**

In addition to this Court's lack of subject matter jurisdiction, as demonstrated in Section II *supra*, Dr. Gopalan's tortious interference with contract claim is also subject to dismissal for failure to state a claim upon which relief can be granted. Even liberally construing his complaint, Dr. Gopalan does not sufficiently plead the required elements of the existence of a valid contract and the intentional procurement of the contract's breach.

To state a claim for tortious interference with contract under Maryland law, a plaintiff must plead the following elements: (1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; (5) resulting damages to the plaintiff. *Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons,* 358 F. Supp. 2d 475, 479 (D. Md. 2005) (citing *Fowler v. Printers II*, 89 Md. App. 448, 466, 598 A.2D 794, 802 (1991). Failure on any of these elements is fatal. *See e.g., Collins Entm't Corp. v. Drews Distrib. Inc*., No. 98-1083, 173 F. 3d 849, at *4 (4th Cir., March, 9, 1999).

Dr. Gopalan does not attach a copy of the alleged contract to the complaint, nor does the complaint provide any information about the formation or terms of the alleged contract. The complaint does not allege how the defendants interfered with the performance of the claimed contract, nor does it set forth the requisite intent. Dr. Gopalan merely alleges that "Defendants tortiously interfered with [his grant contract] to cause it to be breached and the funding to be terminated. When the US [*sic] Department of Education was unwilling

to breach, Defendants tortiously sought to close the institute to induce breach." Compl. at ¶ 106. Dismissal is appropriate where, as here, Dr. Gopalan has failed to allege all elements of a claim for tortious interference with contract. *See, e.g. Audio Visual Assocs., Inc. v. Sharp Elecs. Corp.,* 210 F. 3d 254, 261 (4th Cir. 2000) (affirming dismissal of tortious interference with contract claim where plaintiff failed to allege an element of that claim). His generic pleading of the elements, without factual support, is insufficient to withstand a motion to dismiss. *See Painter's Mill Grille, LLC v. Brown,* 716 F. 3d 342 (4th Cir. 2013) (applying Maryland law, holding that plaintiff's claim for tortious interference with contracts failed to state a claim where it only alleged that plaintiff entered into a contract with an unidentified third party and that defendants intentionally induced the breach, but failed to provide any factual allegations regarding the defendants' intentional interference). Accordingly, Dr. Gopalan 's tortious interference with contract claim should be dismissed.

## CONCLUSION

The motion to dismiss should be granted and the complaint should be dismissed in its entirety.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Sarah Marquardt

_____

SARAH MARQUARDT
Federal Bar No. 17294
Assistant Attorney General
Office of the Attorney General

200 St. Paul Place, 17th Floor
Baltimore, Maryland  21202
(410) 576-6437 (facsimile)
SMarquardt@oag.state.md.us
(410) 576-6320
(410) 576-6437 (facsimile)

November 10, 2025

*Attorney for Defendants*
*University of Maryland Eastern Shore,*
*University System of Maryland,*
*Rondall Allen,*
*Heidi Anderson,*
*Jason Casares,*
*Jay Perman*